# EXHIBIT C

# KATZ BANKS KUMIN

**Debra S. Katz, Partner**
Direct: (202) 299-1143
Email: katz@katzbanks.com

By Electronic Mail
December 10, 2025

Emily Drake
U.S. Office of Special Counsel
1730 M St. N.W., Suite 218
Washington, D.C., 20036-4505
edrake@osc.gov

Dear Emily:

As you know, Dr. Jeanne M. Marrazzo submitted a prohibited personnel practice ("PPP") complaint and disclosure to the Office of Special Counsel on September 4, 2025. Subsequent to her filing, she spoke to the media about the substance of her complaint and disclosure. A mere 22 days later after her filings, on September 26, 2025, U.S. Health and Human Services Secretary John F. Kennedy Jr. terminated Dr. Marrazzo's employment, effective that day. As detailed in the enclosed second addendum to Dr. Marrazzo's PPP complaint, this termination constitutes additional retaliation under the Whistleblower Protection Act, 5 U.S.C. § 2302(b).

Sincerely,

*[signature]*

Debra S. Katz
Attorney for Dr. Jeanne M. Marrazzo

cc: Dr. Jeanne M. Marrazzo
Enclosure

# SECOND ADDENDUM
# TO THE COMPLAINT OF PROHIBITED PERSONNEL PRACTICE
# AND OTHER PROHIBITED ACTIVITY
# BY THE DEPARTMENT OF HEALTH AND HUMAN SERVICES
# SUBMITTED BY DR. JEANNE MARRAZZO

This Second Addendum details additional illegal retaliation Dr. Jeanne Marrazzo, former Director of the National Institute of Health's ("NIH") National Institute of Allergy and Infectious Diseases ("NIAID"), has experienced since the submission of her Prohibited Personnel Practice Complaint, OSC File No. MA-25-006254 ("PPP Complaint), and Report of Government Wrongdoing (Disclosure), OSC File Nos. DI-25-002354 ("Disclosure Complaint") to the Office of Special Counsel ("OSC") on September 4, 2025.

## I.   FACTUAL BACKGROUND

### a. After filing with OSC, Dr. Marrazzo spoke to the press about HHS's legal violations, actions threatening public health and safety, and waste of resources.

Dr. Marrazzo's OSC complaints were widely reported in several major news outlets. Dr. Marrazzo spoke publicly about her concerns and received extensive media coverage, including through exclusive interviews with the Washington Post,[1] New York Times,[2] and Politico,[3] the Atlantic,[4] and STAT.[5] She also sat for a lengthy interview with CBS nightly news, which was televised nationwide.[6] In these interviews, Dr. Marrazzo spoke about HHS retaliation against her, and also reported about HHS's dangerous and unscientific withdraw of support for vaccines and vaccine studies; abrupt cancellation of grants and clinical trials for political reasons; censorship of scientific research, and; prioritization of politics over science. She told the media that HHS's actions, particularly in ending support for promising research, was endangering the health of the American people by undermining our ability to fight infectious diseases to degree

---

[1] Carolyn Y. Johnson, *Key NIH leader questioned vaccines, according to whistleblower complaints*, WASH. POST (Sept. 5, 2025), https://www.washingtonpost.com/science/2025/09/05/whistleblower-complaints-nih-vaccines/.

[2] Benjamin Mueller, Whistle-Blower Complaints Detail Tension Over Vaccines at N.I.H., N.Y. TIMES (Sept. 4, 2025), https://www.nytimes.com/2025/09/04/health/nih-whistle-blower-complaints-vaccines-trump.html.

[3] Erin Schumaker Ruth Reader, Inside the NIH whistleblower complaints, POLITICO (Sept. 8, 2025), https://www.politico.com/newsletters/future-pulse/2025/09/08/inside-the-nih-whistleblower-complaints-00550681.

[4] Katherine J. Wu, *The HHS Officials Being Paid Six Figures to Do Nothing*, THE ATLANTIC (Sept. 15, 2025), https://www.theatlantic.com/health/2025/09/nih-administrative-leave/684191/.

[5] Anil Oza and Megan Molteni, *Two former top NIH officials say they were forced out in retaliation for objecting to grant terminations*, STAT (Sept. 4, 2025), https://www.statnews.com/2025/09/04/nih-whistleblower-complaints-research-grants-flu-vaccine-jeanne-marrazzo/.

[6] Ed O'Keefe et al., *NIH whistleblower details clash over childhood vaccines with Trump administration: "We became inconvenient,"* CBS NEWS (Sept. 8, 2025), https://www.cbsnews.com/news/nih-whistleblower-marrazzo-trump-rfk-vaccines/.

that would perilously affect public health for years to come. Through media interviews, she also cautioned the public that Secretary Kennedy and HHS were not credible sources of health guidance and advised members of the public to consider other trusted sources. As quoted in these articles, an HHS spokesperson issued a public statement rebutting Dr. Marrazzo's concerns.[7]

### b. HHS terminated Dr. Marrazzo's employment.

On October 1, 2025, Dr. Marrazzo received a letter from the U.S. Department of Health and Human Services ("HHS") to her home address in Maryland. The letter, attached hereto as Exhibit 1, was dated September 26, 2025, and signed by HHS Secretary Robert F. Kennedy Jr. The letter states in full:

> Pursuant to the U.S. Constitution, Article II, § 2, cl. 2 and 42 U.S.C. § 284(a), the Secretary of Health and Human Services has the authority to appoint Institute and Center Directors at the National Institutes of Health. Accordingly, in my capacity as Secretary, I have decided to terminate your appointment as Director of the National Institute of Allergy and Infectious Disease. The termination is effective September 26th, 2025. Thank you for your service.

Thus, on October 1, Dr. Marrazzo learned that Secretary Kennedy had terminated her employment five days previously. Her termination came twenty-two days after Dr. Marrazzo filed her whistleblower complaints with the OSC.

Prior to receiving this letter, Dr. Marrazzo's last official communication from HHS was on May 21, 2025, when HHS Human Resources requested, via email, that Dr. Marrazzo provide her accurate and updated resume. Dr. Marrazzo complied with the request that same day. Dr. Marrazzo's previous communication from HHS was on March 31, 2025, at 9:53 p.m., when she was involuntarily removed her from her position as NIAID Director. In that email, Human Resources Officer Thomas Nagy informed her that HHS proposed to reassign her to the Indian Health Service ("IHS"), and that she would be placed on administrative leave, presumably until her reassignment was finalized. Dr. Marrazzo promptly responded to Mr. Nagy saying that she was interested in learning more about the IHS opportunities. Neither Mr. Nagy, nor anyone else from HHS, responded to her questions, or provided any further information about her potential reassignment to IHS.

During the six months from April 1, 2025, through her dismissal on September 26, 2025, Dr. Marrazzo continued to be paid, but had no duties or responsibilities. Since early May, HHS denied Dr. Marrazzo access to her NIH email and government websites that required specific NIH credentials to log-in. Dr. Jeffery K. Taubenberger has served as NIAID's Acting Director since Dr. Marrazzo's involuntary removal on March 31, 2025, and continues to hold that position today.

---

[7] *See, e.g.*, WASH. POST, *supra* n. 1; N.Y. TIMES, *supra* n. 2.

## II. LEGAL ANALYSIS

The Whistleblower Protection Act ("WPA") protects federal employees who disclose evidence of illegal or improper government activities. Under the WPA, agencies may not take a "personnel action" against an employee for disclosing information that the employee "reasonably believes" evidences a violation of any law, rule, or regulation; gross mismanagement; a gross waste of funds; an abuse of authority; a substantial and specific danger to public health or safety, or; censorship related to scientific research or the integrity of the scientific process if the censorship will cause one of the aforementioned categories of wrongdoing. 5 U.S.C. § 1213(a)(1); 5 CFR § 1800.3(a).

Specifically, 5 U.S.C. § 2302(b)(8) and prohibits "reprisal based on disclosure of information" that reveals "any violation of any law, rule, or regulation," or "gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety." And § 2302(b)(9) prohibits "reprisal based upon exercising a right to complain." *Tao v. Merit Sys. Prot. Bd.*, 855 F. App'x 716, 717 (Fed. Cir. 2021) (quoting *Serrao v. Merit Sys. Prot. Bd.*, 95 F.3d 1569, 1575 (Fed. Cir. 1996)). Subsection (b)(9) prohibits the government from taking a personnel action against an employee for having exercised "any appeal, complaint, or grievance right granted by any law, rule, or regulation . . . with regard to remedying a violation of paragraph (8)." 5 U.S.C. § 2302(b)(9)(A).

### A. Dr. Marrazzo's protected activity prior to her involuntary removal is detailed in the Addendum to her Complaint of Prohibited Personnel Practice and Other Prohibited Activity.

As detailed in Dr. Marrazzo's first Addendum, Dr. Marrazzo made numerous protected disclosures under the WPA between January 2025 and March 31, 2025, and these protected disclosures contributed to HHS's decision to remove Dr. Marrazzo from her position, place her on administrative leave, and threaten to reassign her to the IHS. The legal bases for Dr. Marrazzo's (b)(8) complaint are detailed in full in the first Addendum and, in the interest of efficiency, are not relitigated here.

### B. Dr. Marrazzo's OSC filings constitute further protected activity under the WPA.

By filing her PPP and Disclosure complaints with the OSC, Dr. Marrazzo exercised complaint and grievance rights granted by the Whistleblower Protection Act. *See id.*; *see also Tao v. Merit Sys. Prot. Bd.*, 855 F. App'x 716, 721 (Fed. Cir. 2021) (concluding that employee's filing of a disclosure complaint with the OSC's Disclosure Unit is protected under section 2302(b)(9)). Dr. Marrazzo's OSC filings are protected under both 5 U.S.C. § 2302(b)(8) and § 2302(b)(9). Specifically, subsection (b)(8) prohibits HHS from taking a personnel action against Dr. Marrazzo because she has disclosed information that reveals "any violation of any law, rule, or regulation," or "gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety." 5 U.S.C. § 2302(b)(8)(A). Dr. Marrazzo's PPP and Disclosure complaints detail information that she reasonably believes evidence a violation of a law, rule, or regulation; gross mismanagement; gross waste of funds; abuse of authority; substantial and specific danger to public health or safety; and scientific censorship. *See Kahn v. Dep't of Just.*, 618 F.3d 1306, 1312–13 (Fed. Cir. 2010) (explaining that

3

a whistleblower need not prove a substantial and specific danger to public health or safety, gross mismanagement, gross waste of funds, or scientific censorship, but rather, must establish that "a disinterested observer with knowledge of the essential facts known to and readily ascertainable by the employee [would] reasonably conclude that the government's action so qualify.") (quoting *Lachance v. White*, 174 F.3d 1378, 1381 (Fed. Cir. 1999)). Therefore, her PPP and Disclosure complaints constitute protected activity under § 2302(b)(8).

Additionally, subsection (b)(9) prohibits HHS from taking a personnel action against Dr. Marrazzo because she has exercised "any appeal, complaint, or grievance right granted by any law, rule, or regulation . . . with regard to remedying a violation of paragraph (8)." 5 U.S.C. § 2302(b)(9)(A). By filing her PPP and Disclosure complaints with the OSC, Dr. Marrazzo exercised complaint and grievance rights granted by the Whistleblower Protection Act. *See id.*; *see also Tao v. Merit Sys. Prot. Bd.*, 855 F. App'x 716, 721 (Fed. Cir. 2021) (concluding that employee's filing of a disclosure complaint with the OSC's Disclosure Unit is protected under section 2302(b)(9)). Therefore, these complaints constitute protected activity under § 2302(b)(9).

### C. Dr. Marrazzo also engaged in protected activity by speaking to the press.

Dr. Marrazzo's statements to, and interviews with, the press are also protected activity under the WPA. "The purpose of the Whistleblower Protection Act is to encourage disclosure of wrongdoing to persons who may be in a position to act to remedy it, either directly by management authority, or indirectly as in disclosure to the press." *Whitmore v. Dep't of Lab.*, 680 F.3d 1353, 1368 (Fed. Cir. 2012) (quoting *Horton v. Dep't of the Navy*, 66 F.3d 279, 282 (Fed. Cir. 1995)). The legislative history of the WPA explicitly recognizes that "disclosures to the press are protected." *Huffman v. Off. of Pers. Mgmt.*, 263 F.3d 1341, 1351 (Fed. Cir. 2001) (citing H.R.Rep. No. 100–413, at 12–13 (1988) (listing the media as an independent entity, such as the inspector general and Congress, to which disclosures may be made)). Therefore, when Dr. Marrazzo disclosed information to the media that she reasonably believes evidences a HHS' violations of law, gross waste of funds, substantial and specific danger to public health or safety, and censorship of scientific research, she engaged in protected activity under the WPA. 5 U.S.C. § 2302(b)(8).

### D. Dr. Marrazzo's protected activity in filing with OSC and speaking to the press contributed to HHS's termination of her employment.

HHS's termination of Dr. Marrazzo's employment is undoubtedly a "personnel action" under the WPA. *See* 5 U.S.C. § 2302(a)(2)(A)(iii); *Flynn v. Sec. & Exch. Comm'n*, No. DC-1221-14-1124-M-5, 2024 WL 4799773, at *5 (M.S.P.B. Nov. 14, 2024); *McCarty v. Env't Prot. Agency.*, No. CH-1221-05-0902-B-1, 2008 WL 263657 (M.S.P.B. Jan. 31, 2008). The timing of Dr. Marrazzo's termination, combined with the demonstrably pretextual justifications proffered by HHS, demonstrate that Dr. Marrazzo's protected disclosures and whistleblower filings with the OSC contributed to HHS's decision to terminate her employment, in violation of the WPA, 5 U.S.C. § 1213(a)(1); 5 CFR § 1800.3(a).

Dr. Marrazzo can establish causation through the "knowledge/timing test." *See Johnston v. Merit Sys. Prot. Bd.*, 518 F.3d 905, 912 (Fed. Cir. 2008) (explaining that whistleblower can establish causation by alleging that (1) the deciding official knew of the protected disclosure, and

4

(2) the adverse action was initiated within a reasonable time of that disclosure). Dr. Marrazzo can easily satisfy the knowledge component of the test because she initially made her protected disclosures directly to senior NIH leadership, including Dr. Memoli, Dr. Lorsch, and Mr. McElroy, the liaison between NIH and the White House. Even if these officials were not the sole decisionmakers, the WPA's causation standard is satisfied upon a showing that at least one of the officials behind the adverse action was aware of her protected activity. *See Cahill v. M.S.P.B.*, 821 F.3d 1370, 1376 (Fed. Cir. 2016).

Further, members of NIH and HHS leadership were certainly aware that Dr. Marrazzo had filed with OSC and spoken to the press. As detailed above, the press widely reported on Dr. Marrazzo's PPP and Disclosure Complaints. An HHS spokesperson not only issued a public statement responding to the complaints, but was quoted in some of the same articles that quoted Dr. Marrazzo. Given that an HHS spokesperson provided official statements about Dr. Marrazzo's protected activity and that these official statements appear in major news outlets in the same articles in which Dr. Marrazzo made protected disclosures, it is incontrovertible that HHS officials had knowledge of Dr. Marrazzo's OSC complaints and statements to the media. It can be reasonably inferred that HHS senior officials, including Dr. Matthew Memoli and Secretary Kennedy, had knowledge of Dr. Marrazzo's OSC complaints and public statements as well. *See Duggan v. Dep't of Def.*, 484 F. App'x 533, 540 (Fed. Cir. 2012) ("[P]roof that an official knew of a protected disclosure may be inferred from the facts of the case[.]") (citing *Massie v. Dep't of Transp.*, 114 M.S.P.R. 155, 160 ¶ 15 (2010)). Even if some decisionmakers were unaware of Dr. Marrazzo's OSC complaints and statements to the press, the knowledge component of the test is satisfied upon a showing that anyone with knowledge of the protected disclosure could have influenced the decisionmakers. *See Walker v. Dep't of the Navy*, No. SF-1221-18-0510-W-1, 2024 WL 2317711, at *6 (M.S.P.B. May 21, 2024) ("An appellant may establish constructive knowledge by showing that an individual with actual knowledge of the disclosure or activity influenced the official accused of taking the retaliatory action."). Given the widespread publicity of Dr. Marrazzo's complaints and the fact that HHS issued an official response, Dr. Marrazzo can establish that at least some decisionmakers were aware of her complaints and/or influenced by someone who was.

The timing of the agency's adverse actions against Dr. Marrazzo satisfies the second prong of the knowledge/timing test, which requires temporal proximity between an employee's protected disclosure and the agency's adverse actions. *See Redschlag v. Department of the Army*, 89 M.S.P.R. 589, ¶ 87 (2001) (appellant's disclosures were a contributing factor in her removal when they were made approximately 21 months and then slightly over a year before the agency removed her); *see also Jones v. Department of the Interior*, 74 M.S.P.R. 666, 676 (1997) (appellant's disclosures were a contributing factor in the lower rating the agency gave him in his performance evaluation, which occurred over a year after he made the disclosures). Here, Dr. Marrazzo filed her complaints with OSC just twenty-two days before her termination, and spoke to the press just two to three weeks prior to her termination. The temporal proximity between her protected activity and the adverse action taken against her easily satisfies the timing element of the knowledge/timing test. *See Swanson v. General Services Administration*, 110 M.S.P.R. 278, ¶ 12 (2008) (finding interval of two to three months sufficiently close to satisfy the timing element of the knowledge/timing test). Therefore, Dr. Marrazzo can make a *prima facie* case of retaliation in violation of the WPA. *See, e.g., Johnston v. Merit Sys. Prot. Bd.*, 518 F.3d 905, 912

5

(Fed. Cir. 2008) (" [A] whistleblower need only allege that the deciding official knew of the disclosure and that the adverse action was initiated within a reasonable time of that disclosure in order to make a prima facie case that the disclosure was a contributing factor in the adverse action.").

### E. HHS's termination of Dr. Marrazzo's employment demonstrates that the agency's proffered justifications for Dr. Marrazzo's removal are pretextual.

When HHS removed Dr. Marrazzo from her position as NIAID Director, the email from HHS Human Resources Officer Thomas Nagy stated that HHS did so in order to reassign her to a position within the IHS. HHS terminated her employment without reassigning her to the IHS. Therefore, it is not credible that the agency needed to remove her from her position so that she could fill another position. Meanwhile, the person HHS appointed to serve as NIAID's Acting Director following Dr. Marrazzo's involuntary removal, Dr. Taubenberger, continues to serve in that role. Dr. Taubenberger has not raised concerns about the Trump administration's politicalization of NIAID. And, on November 12, 2025, NIH posted a job advertisement for the Director of NIAID on its website, indicating that the job has not permanently moved to the IHS.[8]

Because HHS's proffered justification is not credible, it cannot meet its burden to establish, "by clear and convincing evidence, that it would have taken adverse personnel actions against [her] even absent any protected disclosures." *Johnston v. Merit Sys. Prot. Bd.*, 518 F.3d 905, 911 (Fed. Cir. 2008); *see also Carr v. Soc. Sec. Admin.*, 185 F.3d 1318, 1323 (Fed. Cir. 1999) (considering "the strength of the agency's evidence in support of its personnel action" in determining whether the agency has met its burden); *Whitmore v. Dep't of Lab.*, 680 F.3d 1353, 1369 (Fed. Cir. 2012) (explaining that "veracity and reliability" of agency's evidence alleged explanation of personnel action is relevant to assess independent causation).

### F. HHS's termination of Dr. Marrazzo contravenes civil service laws.

HHS and NIH failed to provide Dr. Marrazzo the pre-termination due process to which she was entitled, thereby violating both the U.S. Constitution and the Civil Service Reform Act of 1978 (the "CSRA"). Dr. Marrazzo was not afforded any process or protections under the CSRA, despite having due process rights under that statute. *See Lal v. M.S.P.B.*, 821 F.3d 1376 (Fed. Cir. 2016) (holding that employees appointed under 42 U.S.C. § 209(f)) like Dr. Marrazzo have appeal rights under the Civil Service Due Process Amendments of 1990). Her summary dismissal, effective before she even knew she had been terminated, violated the Due Process clause of the Fifth Amendment to the U.S. Constitution. Pursuant to 5 U.S.C. § 7511 and § 7513, Dr. Marrazzo had a property interest in continued employment with HHS. As such, pursuant to § 7513 and the Fifth Amendment, HHS was required to provide Dr. Marrazzo notice of the proposed removal, an opportunity to respond to the proposed removal notice, and a written decision. HHS provided Dr. Marrazzo no such opportunities. Rather, she received nothing other than a letter from the Secretary informing her of her termination and thanking her for her service.

---

[8] *See Job Posting: Director, National Institute of Allergy and Infectious Diseases*, NIH OFFICE OF HUMAN RESOURCES, https://hr.nih.gov/careers/open-positions/job-87a14325-ff4a-4f3d-8131-147ebc770a18.

### G. The OSC should request that HHS reinstate Dr. Marrazzo and award appropriate damages.

In light of her unlawful termination, Dr. Marrazzo respectfully renews her request for the OSC to order relief, including her reinstatement to her position as NIAID Director. The WPA entitles Dr. Marrazzo to reinstatement, as well as attorney's fees and any other reasonable and foreseeable consequential damages, and compensatory damages. 5 U.S.C.A. § 1214(g)(1), (2). Because there are reasonable grounds to believe that a prohibited personnel practice occurred, the OSC should request that HHS stay the personnel action and reinstate Dr. Marrazzo as NIAID Director. *See* 5 U.S.C. § 1214(b)(1)(A)(i). Such a stay would be appropriate because it "is designed to permit OSC to complete its investigation and may be granted on the basis of relatively little information." *Special Counsel v. U.S. Fish & Wildlife Serv., Dep't of Interior*, 62 M.S.P.R. 388, 392 (1994).

# Exhibit 1



**DEPARTMENT OF HEALTH & HUMAN SERVICES**

Office of the Secretary

Washington, D.C. 20201

September 26th, 2025

Dear Jeanne M Marrazzo:

Pursuant to the U.S. Constitution, Article II, § 2, cl. 2, and 42 U.S.C. § 284(a), the Secretary of Health and Human Services has the authority to appoint Institute and Center Directors at the National Institutes of Health. Accordingly, in my capacity as Secretary, I have decided to terminate your appointment as the Director of the National Institute of Allergy and Infectious Disease. This termination is effective September 26th, 2025.

Thank you for your service.

Regards,

*[signature]*

Robert F. Kennedy, Jr.